IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM VETMEDICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:11-cv-0998-DGK |
| UNITED FOOD AND COMMERCIAL WORKERS, DISTRICT UNION LOCAL TWO, | ) ) ) ) ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

Plaintiff Boehringer Ingelheim Vetmedica, Inc. ("BIVI") brings this action under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to vacate an arbitration award issued in favor of Defendant United Food and Commercial Workers, District Union Local Two ("Local Two").

Now before the Court are the parties' cross-motions for summary judgment. BIVI argues the arbitrator's award should be overturned because it does not draw its essence from the parties' collective bargaining agreement and because it violates public policy. Finding no merit to these arguments, Plaintiff's motion (Doc. 10) is denied and Defendant's motion (Doc. 12) is granted.

### Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Judicial review of arbitration awards is "extremely limited." *United Food and Comm. Workers v. Shop N' Save Warehouse Foods, Inc.*, 113 F.3d 893, 894 (8th Cir. 1997). Courts reviewing an arbitrator's decision "must accord 'an extraordinary level of deference' to the underlying award." *Boise Cascade Corp. v. PACE Local 7-0159,* 309 F.3d 1075, 1080 (8th Cir. 2002) (quoting *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471,* 80 F.3d 284, 287 (8th Cir. 1996)). A court does not "sit to hear claims of factual *or legal* error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Bureau of Engraving, Inc. v. Graphic Comm. Int'l Union*, 284 F.3d 821, 824 (8th Cir. 2002). A court is "not authorized to reconsider the merits of an arbitral award, 'even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" *Boise Cascade*, 309 F.3d at 1080 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

If the arbitrator is "even arguably construing or applying the contract" then he is acting within the scope of his authority and the court cannot overturn his decision, even if the court is convinced that the arbitrator committed serious error. *Misco, Inc.*, 484 U.S. at 38. As long as the arbitrator's decision "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice," the court must uphold the award. *Id*. As the Supreme Court has emphasized, "it is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 599 (1960).

**Factual Background**

The facts here are largely undisputed. Plaintiff BIVI is an international animal health pharmaceutical manufacturer which operates a plant in St. Joseph, Missouri, producing pharmaceutical and biological products for companion animals and food producing animals. BIVI's development and production facilities, products, and processes are highly regulated by various agencies, including the USDA.

Defendant Local Two is the certified collective bargaining representative for certain hourly production and maintenance workers at BIVI's St. Joseph, Missouri facilities. Local Two and BIVI are parties to a collective bargaining agreement ("the CBA") that sets forth the terms and conditions of employment for Local Two's members in the St. Joseph facilities.

**1. The CBA, the handbook of standard operating procedures, and plant conduct rules**

The "Management" clause in the CBA provides that,

> The Employer shall have the exclusive right to manage the business efficiently, safely, and profitably and to direct the work force, including but not limited to, the right to select, hire, classify, assign, reassign, transfer, retire, promote and demote any and all employees; the right to establish work rules and rules of conduct any time, to maintain discipline and efficiency and to discipline, suspend, or discharge any employee *for cause*.

CBA (Doc. 11-5) at 4 (emphasis added). It also provides that, "Employees shall observe all Employer rules and regulations covering protection of the plant, its contents, and the work being done therein as presently or hereinafter in force." CBA at 30.[1]

---

[1] Article VIII - "Seniority," Section 3 - "Loss of Seniority," of the CBA also provides that, "[a] bargaining unit employee's continuous employment shall be broken and seniority rights and any and all other rights which the employee may have had under this Agreement shall be forfeited for . . . (d) Falsifying employment records, time records, or any other Employer work records." CBA at 7. While this provision is arguably dispositive of the present dispute, because BIVI did not argue this point during arbitration, *see* Thomas Marshall Aff. (Doc. 15-1) at ¶¶ 5, 7; BIVI Post Hearing Brief (Doc. 15-2), it is waived. *Medicine Shoppe Int'l, Inc. v. Turner Inv., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) (holding argument not presented to arbitrator may not be raised for the first time in federal court).

The CBA contains a mandatory grievance resolution procedure which provides that an unresolved grievance may be submitted to arbitration. CBA at 31-32. It states that "[n]o arbitrator shall have the authority to add to, subtract from, or modify any of the terms of this Agreement or to deprive the Employer of any propriety rights retained under this Agreement." CBA at 32. It states that an arbitrator's decision "shall be final and binding on both parties." CBA at 32.

BIVI also has a handbook of Standard Operating Procedures ("SOPs") which delineates the process and requirements for uniform documentation throughout all departments at the BIVI's St. Joseph facilities.[2] This handbook contains specific instructions for collecting data from incubators. These instructions were not followed by the employee disciplined here.

Finally, BIVI maintains Plant Conduct Rules which purport to set out the range of discipline for various infractions.[3] These rules state that "GROUP I VIOLATIONS SHALL RESULT IN IMMEDIATE DISCHARGE," and that "[f]alsifying any employment records or

---

[2] Relevant to the discussion here, the SOP generally states that:

> 2. All activities are to be documented by the person performing the work at the time that it is performed.
> 3. Required information that is missing and found at a later date by a reviewer should be filled in with a note such as "For work performed on (previous date)" and initialed and dated with current date.
> . . .
> 6. Specific guidance for completion of batch records and/or controlled forms.
> . . .
>     b. Only document completion of a step/action as the work is performed. Do not prefill in data or signatures. The information must be recorded at the time the work is performed. . . .
> . . .
>     d. For batch record documentation a "checked by" signature indicates that you were there when the work was performed and you verified the action that took place . . . .

SOP 00-002-09.

[3] In its proposed statement of facts no. 13, BIVI asserts that "*Pursuant to the CBA*, BIVI maintains a set of Plant Conduct Rules." Pl.'s Sugg. in Supp. (Doc. 11) at 6 (emphasis added). This assertion is not supported by the record. While BIVI has a set of Plant Conduct Rules, they are not referenced in the CBA.

any Company work records or time records" is a Group I offense. Plant Conduct Rules (Doc. 11-8) at 1.

**2. Cheryl Silkett's termination**

Cheryl Silkett ("Silkett") joined BIVI in April 1997 as a packaging line worker. In January 2002, she became a Lab Specialist. At the time of her termination, she was a Local Two member working as a Labor Grade 3, Lab Technician Lab Specialist. Among other things, she was responsible for monitoring equipment, including incubators, and making daily notations of the readings. On August 24, 2010, she was out sick and her supervisor, Mike Stewart ("Stewart"), assigned another employee, Beth Evans ("Evans"), to cover her work that day. When Evans began her rounds she noticed that the form on one incubator had already been completed; Silkett had filled-out and initialed the incubator's $CO_2$, humidity, and temperature readings for the entire week. Evans immediately reported this to Stewart. Stewart and Evans then checked other equipment and found a total of seven forms that had been precompleted with purported readings and initialed by Silkett for the entire week.

When Silkett reported back to work on August 25th, she was brought into a meeting with management concerning the forms. Silkett admitted that she had pre-filled the dates and readings for the week. After she admitted prefilling the data, BIVI terminated her.

**3. The arbitration and the arbitrator's award**

Silkett contested her termination. After her grievance was denied, the parties proceeded to arbitration before Thomas J. Erbs, an arbitrator selected by the parties in accordance with the CBA. On May 11, 2011, he conducted a hearing during which the parties presented their respective cases through sworn testimony, exhibits, and briefs.

5
Case 4:11-cv-00998-DGK   Document 22   Filed 10/17/12   Page 5 of 14

The parties agreed that the arbitrator should decide the following issues: "Was the Grievant discharged for just cause? If not, what should the remedy be?" BIVI Post Hearing Brief (Doc. 15-2), at 3. The arbitrator ruled that the questions before him were, "Was the Grievant discharged for just cause? And if not, what is the appropriate remedy?" Award of Arbitrator ("AA") at 6.

In his decision, the arbitrator found that Silkett had falsified company records, disobeyed the SOP, and violated Rule 4 of Group I. He noted that,

> [F]alsification of Company records is a serious offense . . . . The data which is made available to . . . governmental agencies, or is periodically reviewed by them, must be accurate. Employees like the Grievant, who are oftentimes unsupervised, must be trustworthy. The Company must be able to rely upon the accuracy of the information that is gathered by these employees during the performance of their duties. Falsification of data in any highly regulated industry, especially in laboratory settings, is not acceptable and typically results in discipline. As a result many employers routinely classify falsification of any Company documents as a most serious offense and one that is not typically subject to progressive discipline . . . .

AA at 10. But he also found,

> this is not a typical dishonesty case. Here there has been no showing that the Grievant received any monetary benefit from filling out the forms before she did the work, nor that this would enable her to take extra breaks. There is no evidence which contradicts the Grievant's testimony that she intended to perform her duties on a regular basis for the rest of the week and correct any differences noted.

AA at 10. He also noted BIVI "has not proven that the Grievant actually intended to provide false information," AA at 11, that Silkett "was honest about what she did from the outset," and that "she has over thirteen (13) years seniority and, except for some attendance warnings, is discipline free." AA at 13. Additionally, the arbitrator found "[t]he Company appears to have projected a somewhat lackadaisical attitude toward the data gathered by monitoring these

charts." AA at 11. He concluded that "in assessing the discipline, [BIVI] did not give sufficient consideration to the circumstances of the case, the Grievant's seniority, record, and her truthfulness. Based upon these factors discipline less th[a]n discharge is appropriate." AA at 14. The arbitrator ordered Silkett be reinstated with her seniority unbroken, but without backpay.

## Discussion

BIVI argues that the Court should vacate the arbitrator's award because it fails to draw its essence from the CBA and because it contravenes a public policy of requiring competent personnel in the animal pharmaceutical industry. The Court holds BIVI has waived its right to raise these arguments and, even if it had not, the Court would not vacate the arbitrator's award because these arguments are without merit.

**I.     The Arbitrator's decision draws its essence from the parties' agreement.**

    **A.     BIVI waived its right to argue that Article VIII of the CBA provides for immediate discharge because it failed to raise this point before the arbitrator.**

BIVI's first argument is that the arbitrator's award directly conflicts with the CBA, and thus fails to draw its essence from it, because the CBA allegedly provides that employees who falsify company records must be immediately discharged. BIVI contends that Article VIII, Section 3 of the CBA makes falsifying any employment records an immediately dischargeable offense. Sugg. In Supp. of Summ. J. (Doc. 11) at 14. BIVI argues this provision is not ambiguous, therefore the arbitrator was duty bound to uphold the mandatory termination and he exceeded his powers by not doing so. BIVI contends this case is analogous to cases where a mandatory disciplinary clause in a CBA compelled reversal of an arbitrator's decision reinstating the employee. *See, e.g., Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713,* 103 F.3d 449, 452 (5th Cir. 1997) (vacating arbitration award for failure to draw essence from the contract where arbitrator reinstated

employee discharged under CBA provision calling for immediate discharge for conduct); *In Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics & Novelty Workers, AFL-CIO*, 738 F. Supp. 1262, 1267-68 (E.D. Mo. 1990) (same).

The Court, however, cannot consider BIVI's Article VIII argument because BIVI waived it by not raising it in the arbitration. It is well-established that an argument not presented to the arbitrator may not be raised for the first time in federal court. *Medicine Shoppe Int'l, Inc. v. Turner Inv., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) (holding that when a party fails to raise an issue before the arbitrator, a federal court's limited ability to review the award is "compressed still further, to nil."). It is clear that BIVI did not argue to the arbitrator that Article VIII applied to this dispute, *see* Thomas Marshall Aff. (Doc. 15-1) at ¶¶ 5, 7; BIVI Post Hearing Brief (Doc. 15-2), therefore BIVI cannot present this argument now. "To rule otherwise would be to thwart the national labor policy of encouraging the expeditious private arbitration of labor disputes without resort to the courts." *United Steelworkers of Am., AFL-CIO v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981).

### B. The Plant Conduct Rules do not carry the weight of language in the CBA, thus the arbitrator's award did not exceed his authority.

Arguing in the alternative, BIVI contends the arbitrator's decision fails to draw its essence from the CBA because a Plant Conduct Rule stated that Silkett should be discharged immediately. BIVI asserts that although the Plant Conduct Rules are not contained in the CBA, they were promulgated in accordance with the CBA's "Management" clause and thus carry the force of provisions contained in the CBA. BIVI cites a Fourth Circuit case, *Mountaineer Gas Co. v. Oil, Chem., & Atomic Workers Int'l Union*, for support. 76 F.3d 606, 610 (4th Cir. 1996) (holding that a rule promulgated by an employer under a contract clause giving management the right to make and enforce disciplinary rules has "the force of contract language.").

There are numerous flaws with BIVI's argument, not the least of which is that the Eighth Circuit has explicitly considered *Mountaineer's* reasoning and rejected it. In *Trailmobile Trailer, LLC v. International Union of Electronic, Salaried, Machine and Furniture Workers, AFL-CIO*, the Eighth Circuit Court of Appeals wrote:

> Trailmobile urges us to recognize that its employee handbook rules promulgated pursuant to the management rights clause have the force of contract provisions, citing *Mountaineer Gas Co. v. Oil, Chem., & Atomic Workers Int'l Union,* 76 F.3d 606, 610 (4th Cir. 1996) ( "[W]hen the . . . agreement reserves to management the right to make and enforce disciplinary rules, any rules or policies . . . are thus incorporated into the collective bargaining agreement and have the force of contract language."), which in turn relied on *General Drivers, Warehousemen & Helpers Local Union 968 v. Sysco Food Servs., Inc.*
>
> Other courts of appeals have declined to apply *Mountaineer* in the broad way that Trailmobile suggests, holding instead that when an agreement does not define just cause and does not include an explicit provision for offenses that will lead to termination, a reviewing court must defer to an arbitrator's interpretation of the just cause provisions.
>
> . . .
>
> **Our case law similarly differentiates between explicit contractual language and rules or policies promulgated under a general management rights clause like the one in the present case.** In <u>Local 238 Int'l Bhd. of Teamsters v. Cargill, Inc.</u>, an employee was discharged pursuant to a drug policy incorporated by reference into an agreement that provided that any disputes over the policy would trigger the grievance process. We stated that if the agreement had "expressly provided that an employee ... will be terminated, we would agree ... that the arbitrator's award ignored the plain mandatory language of that agreement," but the "policy was not written verbatim into" the agreement, and thus because there remained a tension or ambiguity in the contract provisions, we upheld the arbitrator's interpretation. Concerning remedy, we upheld the arbitrator's decision that "when the parties agreed to

9

commit drug and alcohol policy disputes to the normal grievance/arbitration process, that included such remedial discretion as an arbitrator customarily has in reviewing terminations for just cause." In contrast, in *Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, we vacated an arbitrator's award because the relevant contract contained a clause that provided that "[a]n employee shall lose [his job] for the following reasons," and then listed the infractions, one of which the employees had admittedly violated. We held that "[w]hen the [agreement] contains an express provision authorizing the termination of an employee for specific conduct, the general 'for cause' provision ... does not conflict with the express discharge provision and thus no ambiguity exists."

Trailmobile's handbook rules were not expressly written into the contract, which specifically provided for arbitration of disputes regarding discharge, and Trailmobile cites to no contract limitation on the arbitrator's power of remedy other than the provisions for employer discretion previously discussed. Furthermore, the handbook rule provides that an employee "may" be discharged, suggesting a case-by-case analysis that further supports the arbitrator's decision to review the choice of a disciplinary measure. Accordingly, we conclude that the arbitrator did not violate the plain language of the contract when he determined that Wigginton had engaged in fighting and yet should not have been discharged.

223 F.3d 744, 747-48 (2000) (internal citations omitted) (emphasis added). While BIVI may disagree with *Trailmobile Trailer*'s holding, it is still binding on this Court.[4] Consequently, the Court finds no merit to the contention that the Plant Conduct Rules carry the same weight as an express provision of the CBA.

BIVI's argument is further weakened by the fact that its power under the Management provision is limited to disciplining or discharging employees "for cause." The Management provision states, "[t]he Employer shall have the exclusive right . . . to establish work rules and

---

[4] Counsel for BIVI obviously knew of the Eighth Circuit's criticism of the *Mountaineer* decision, given that counsel cite *Trailmobile Trailer* in another portion of their brief.

rules of conduct any time, to maintain discipline and efficiency and to discipline, suspend, or discharge any employee *for cause*." CBA at 4 (emphasis added). Thus, under the CBA, no employee can be terminated for a Plant Conduct Rule violation unless that termination is for cause, and so the arbitrator's decision drew its essence from the CBA. In fact, given the language in the Management provision, the arbitrator was required to determine whether Silkett's termination was for cause. If he had summarily upheld her termination simply because there had been a Group I Plant Conduct Rule violation and not considered whether her termination was for cause—as BIVI now contends he should have done—then the award would not have been drawn from the essence of the CBA.

### C. Because the arbitrator was arguably construing the CBA, he was acting within the scope of his authority and the Court cannot overturn the award.

As noted above, BIVI argued to the arbitrator that Silkett was disciplined pursuant to the CBA's Management provision which requires any disciplinary action be for just cause. Thus, the arbitrator was required to construe what "just cause" meant and so his award "was a matter of contract interpretation within the arbitrator's domain." *Trailmobile Trailer*, 223 F.3d at 747. Consequently, even if the Court were convinced that the arbitrator committed a serious error, and it is not, the Court could not overturn his decision. *Misco, Inc.*, 484 U.S. at 38.

It is clear from reading the award that the arbitrator carefully considered a variety factors in determining whether there was just cause to terminate Silkett. He took into account that she committed a serious offense which is not typically subject to progressive discipline and that her actions disobeyed the SOP and a Group I Plant Conduct Rule. He also considered the extent of her falsification and how it affected the company's operation, the number of times she did it, the fact that she was honest about what she had done, that by pre-filling the data she was not attempting to avoid work or take extra breaks, and that she was a 13 year employee with a

11

relatively unblemished record. Finally, the arbitrator noted that the company projected a somewhat lackadaisical attitude about the data gathered, and that whatever the company's written policy was, employees who falsified records were not, in fact, always discharged. Consequently, the Court holds that in reaching his decision the arbitrator was construing the CBA and so acting within the scope of his authority.

## II. The award does not violate public policy.

### A. BIVI has waived this argument.

BIVI also argues the award should be vacated because it violates an explicit public policy of ensuring competent personnel when dealing with issues of public health and safety. "[A]n arbitration award is unenforceable if it contravenes an 'explicit public policy.' The public policy in question must be well defined and dominant, and is to be ascertained by 'reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *MidAmerican Energy Co. v. Int'l. Broth. of Elec. Workers Local 499*, 345 F.3d 616, 620 (8th Cir. 2003) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983)). Where an employee's reinstatement is at issue, the question is not whether the employee's behavior violated public policy, but whether the employee's reinstatement violates public policy. *MidAmerican Energy Co.*, 345 F.3d at 620.

As a threshold matter, the Court cannot consider BIVI's public policy argument because BIVI stipulated before the arbitrator that the sole issue to be determined was whether there was just cause for Silkett's termination. By so stipulating, BIVI waived any other argument, such as a public policy argument, that the arbitrator needed to consider. A court cannot overturn an award because a party failed to raise an issue with the arbitrator. *See Medicine Shoppe*, 614 F.3d

at 489 (holding a party who failed to raise public policy argument in arbitration waived it and could not raise it in federal court).

### B. Reinstating Silkett does not violate public policy.

Even if the Court could consider this argument, the Court would not overturn the award on this basis. BIVI contends this case is analogous to *Iowa Electric Light and Power Co. v. Local Union 204*, where an arbitrator ordered the reinstatement of an employee at a nuclear power plant who had been fired for disabling a federally-required safety mechanism that provided secondary containment of radiation. 834 F.2d 1424, 1428-29 (8th Cir. 1987). In upholding the district court's decision to overturn the award, the Eighth Circuit noted the employee broke a safety rule that was put in place to protect "the public from the hazards of nuclear radiation," and that reinstating the employee would violate dominant, explicit, and well-defined public policy because the employee could not be trusted not to violate this important safety rule again. *Id.* at 1428. The Eighth Circuit noted the employee had already been extensively screened before he was hired, that the safety violation at issue occurred after the employee had already participated in several classes discussing the very safety feature he disabled, and that the Nuclear Regulatory Commission had approved the employee's discharge. *Id.* at 1426-28.

This case is qualitatively different from *Iowa Electric Light*. While the research and production of biological products in the animal health industry involves important safety issues, BIVI has not shown that the animal health industry is as heavily regulated as the nuclear industry, or that Silkett's behavior risked human lives. Additionally, BIVI has failed to show that Silkett cannot be trusted in the future. The facts as found by the arbitrator suggest she can, and the Court has no grounds to second guess those findings. Because BIVI has not shown that

as a matter of public policy Silkett should not be allowed to return to her job, the Court cannot conclude that the arbitrator's award violates public policy.

## Conclusion

For the reasons discussed above, Plaintiff's motion for summary judgment (Doc. 10) is DENIED and Defendant's motion (Doc. 12) is GRANTED.

**IT IS SO ORDERED.**

Date:   October 17, 2012               /s/ Greg Kays
                                       GREG KAYS, JUDGE
                                       UNITED STATES DISTRICT COURT